IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS-SONOMA, INC., | No. C 06-6572 JSW (MEJ) |
| Plaintiff(s), | **REPORT & RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| vs. | |
| FRIENDFINDER, INC., et al., | |
| Defendant(s). | |

## I. INTRODUCTION

Before the Court is Plaintiff Williams-Sonoma, Inc.'s Motion for Default Judgment, filed September 20, 2007. (Doc. #55.) For the following reasons, the Court RECOMMENDS that the District Court GRANT default judgment, with the exception of the withdrawn claim for contributory trademark infringement, against Defendants Online Marketing Service, Ltd., Unimaster, Ltd., Andrej Korchev, YetisCash, Inc., Vladimir Techl, Alex Lexico, Sweethelda Ballesteros, Stein Tvedt, and Eddie Morgan (collectively "Defaulting Defendants" or "Defendants").[1]

## II. BACKGROUND

**A.    Factual Background**

WSI is a home furnishings retailer under the Pottery Barn brand. It sells through retail stores, including POTTERY BARN ® and pottery barn kids® stores, and through catalogs and internet sites, under the POTTERY BARN ®, pottery barn kids®, and PBteens® trademarks. (Doc. #18, First Am. Compl. ("FAC") ¶2.) WSI owns federal trademark registrations pertaining to each of

---

[1] In addition to the Defaulting Defendants, WSI named nine other individuals and corporations in this case. These nine defendants settled with WSI and were voluntarily dismissed. *See* Doc. ## 21, 23, 27, 28, 37, and 43.

these trademarks and brands.  (Doc. #7, Decl. of Sandra Stangl, Tab B of Appendix ("Stangl Decl.") ¶4 & Ex. D.)

Each of the Defaulting Defendants has owned and operated websites that offer sexually explicit, pornographic images and videos for sale, and /or advertise, link to, or affiliate with other sites that offer for sale images and videos.  (FAC ¶3.)  Defendant Online Marketing Services, Ltd. is a United Kingdom corporation that owns, operates, and hosts graphic, sex-oriented web sites, including <www.onlinemarketingservices.biz> and a variety of web sites with the extension <filthserver.com>.  (FAC ¶3(a).)

Defendants Unimaster, Ltd., and Andrej Korchev, located in the Ukraine, own, operate, and manage pornographic web sites, including a variety of sites with the extension <just-a-porn.com>.  (FAC ¶3(b)-(c).)

Defendants YetisCash, Vladimir Techl and Alex Lexico, of the Czech Republic, own, operate, and manage a variety of pornographic web sites, including a variety of web sites with the extension <www.sexcountry.net>.  (FAC ¶¶3(d)-(f).)

Defendant Sweethelda Ballesteros of the Philippines formerly owned and operated the website <www.slutty-teens.net> and then transferred ownership to Defendant Stein Tvedt of Norway, who currently owns and operates the website.  (FAC ¶3(r); Doc. #56, Decl. of Timothy R. Cahn, ¶6.).

Defendant Eddie Morgan of Canada owned and operated the <www.babypotterybarn.com> web site, which advertised and provided active links to porn sites.  (FAC ¶3(s); Cahn Decl., ¶7.).

Each of the Defaulting Defendants has used the POTTERY BARN trademarks without consent from WSI.  (FAC ¶¶10-15, 21-22.)  Each Defendant also sponsored or affiliated with other sites that used the POTTERY BARN marks without consent from WSI.  (FAC ¶¶32-36.) Defendants' unauthorized use of the marks has taken such forms as displaying the POTTERY BARN marks on their sites, in banner ads or porn images or in other content, announcing, for example, the "POTTERYBARNTEENS official website!"  (FAC ¶11(a)); embedding terms, such as "potterybarnteen" in source code or metadata that is used to generate search priority with hyperlinks

2

1  that proclaim, for example, "Potterybarnteens - - Every day 1000 new free potterybarnteen pics."
2  (FAC ¶11(b)); using the term, e.g. "Potterybarnteens," as a domain extension, as in the address
3  <www.just-a-porn.com/potterybarnteens.html> (FAC ¶11(c)); repeatedly using terms, such as
4  "potterybarnteen," as an element of a graphic, sexually explicit narrative that is interspersed with
5  links to other sites such as ". . . who then removed her top revealing her braless breasts to her
6  potterybarnteen." (FAC ¶11(d)); and using WSI's trademark in domain names, such as
7  <www.potterybarnteens.org> and <www.babypotterybarn.com>.  (FAC ¶11(f).)

8  Through Defaulting Defendants' misuse of WSI's marks, Defendants' websites have been
9  prominently identified in response to consumer searches for "pottery barn teens" and similar
10 searches on popular search engines.  (FAC ¶10.)  Defendants' misappropriation of WSI's marks has
11 distracted and diverted customers searching for "Pottery Barn" or "Pottery Barn Teen" goods or
12 related services to Defendants' websites.  (FAC ¶¶10, 14-15.)  Defendants have directly derived
13 revenue by virtue of diverted customers who clicked-through to the advertised sites, thereby having
14 profited on the goodwill of the POTTERY BARN marks.  (FAC ¶15.) .

15 As a retailer of children's home furnishings, WSI alleges that it is harmed by any association
16 with sexually explicit services because any website that uses WSI's marks as a portal to pornography
17 will undermine the wholesome image of high quality and safe furniture for children.  (FAC ¶¶14, 22,
18 28.)  By associating WSI's marks with adult images and services, Defaulting Defendants cause
19 detriment to WSI's reputation.  (FAC ¶22.)  WSI alleges, that the misappropriation was willful and
20 deliberately intended to attract consumers and exploit WSI.  (FAC ¶¶15, 21, 33, 38, and 39.)

21 **B.    Procedural Background**

22 On October 20, 2006, WSI filed its original Complaint.  (Doc. #1.)  On January 1, 2007, WSI
23 filed a First Amended Complaint ("FAC") for Federal Trademark Infringement, Trademark Dilution,
24 Unfair Competition and Accounting/Constructive Trust, Contributory Trademark Infringement, and
25 California Unfair Competition.  (Doc. #18.)  Defaulting Defendants did not answer or otherwise
26 respond.

27 On July 11, 2007, the Clerk of Court entered default against all Defaulting Defendants.

28

3

(Doc. #50.)

On September 20, 2007, WSI filed the present motion for default judgment against Defaulting Defendants, as well as the Declaration of Timothy R. Cahn in support thereof. (Doc. ##55-56.) The Honorable Jeffrey S. White referred WSI's motion to a magistrate judge for a report and recommendation. (Doc. #58).

On November 8, 2007, the Court held a hearing on the matter. None of the Defaulting Defendants appeared at the hearing or otherwise responded to WSI's motion.

## III. DISCUSSION

**A.     Jurisdiction**

When considering whether to enter a default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.")

1.     Subject Matter Jurisdiction

As a general matter, federal courts have subject matter jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. *United States v. Alisal Water Corp.*, 431 F.3d 643, 650 (9th Cir. 2005). Here, the District Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, 1338(a) and (b), 15 U.S.C. § 1121, and 28 U.S.C. § 1367.

2.     Jurisdiction Over the Parties

As to jurisdiction over the parties, a court may exercise either general or specific jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984). General jurisdiction applies where a defendant's activities in the state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. *Data Disc., Inc. v. Systems Tech. Assoc.*, 557 F.2d 1280 at 1287 (9th Cir. 1977) (internal quotations omitted). Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of

4

action. *Id.*

WSI does not claim that there is general jurisdiction over any of the Defaulting Defendants here; they argue only for specific jurisdiction. Courts use a three-part test to evaluate the nature and quality of defendants' contacts for purposes of specific jurisdiction: "(A) some action must be taken whereby defendant purposefully avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (B) the claim must arise out of or result from defendant's forum-related activities; and (C) exercise of jurisdiction must be reasonable." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

    *a.*  *Purposeful Availment*

Under the first prong, Defaulting Defendants must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* at 1362. With respect to conduct over the internet, the Ninth Circuit applies the "sliding scale" test of web interactivity. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). Under this approach, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* At one end of the scale are web sites that actively conduct business over the internet; at the other end of the scale are "passive" web sites that provide only information. *Tech Heads, Inc. v. Desktop Service Ctr., Inc.*, 105 F. Supp. 2d 1142, 1149 (D. Or. 2000). In the middle of the sliding scale are interactive web sites which allow a user to exchange information, but do not consummate business transactions. *Id.* In *Cybersell*, the court held that simply registering another's trademark as an Internet domain name and posting a passive web site on the Internet is insufficient to subject a non-resident defendant to jurisdiction. *Cybersell*, 130 F.3d at 418-19. The defendant's website included only a Florida phone number and an invitation to communicate by email, and the defendant had no additional contacts with forum residents. The Ninth Circuit explained that to exercise jurisdiction in that case, "something more" must exist demonstrating that the defendant directed his activity at the forum state. Id. at 418.

Here, Defaulting Defendants are foreign corporations or individuals, but all have contacts

5

1  with California through their online businesses. They own and operate web sites (or formerly did)[2] -
2  filthserver.com, just-a-porn.com, slutty-teens.net, sexcountry.net, and babypotterybarn.com -
3  through which customers download files, register with them, purchase and pay for pornographic
4  images and movies through Defendants' sites and links, and access links to other sites where
5  additional images and movies can be purchased. (Cahn Decl. ¶¶3-6.) With one exception, the
6  Defaulting Defendants engaged in business with California consumers who accessed adult images
7  and videos, and paid Defendants for them through linked credit card processing sites. (Cahn Decl.
8  ¶¶3-7.) Only the website <babypotterybarn.com>, formerly owned by Defendant Morgan, did not
9  directly offer for sale images and videos. However, it was interactive as it advertised and provided
10 active hyperlinks through which California consumers could search for and access adult images
11 offered by other sites. (Cahn Decl. ¶7, Ex. C.) The Court finds that this level of interactivity
12 establishes Defendants' purposeful availment.

13 In addition, the Defendants who owned the filthserver.com, sexcountry.net, just-a-porn.com,
14 and babypotterybarn.com web sites contracted or affiliated with California residents in furtherance
15 of their online businesses, including the San Francisco company Adult Friend Finder, and used the
16 POTTERY BARN marks to direct business to this local company. (Cahn Decl. ¶¶3-5, 7.) This
17 locally-owned web site offers sexually-explicit adult personal advertisements and describes itself as
18 "the World's largest sex personals and swingers' site." (FAC ¶¶3(j)-(l).) The FriendFinder site pays
19 its affiliates, including Defendants, for directing web traffic to its sites. *Id.* These contacts further
20 support a finding of purposeful availment.

21        *b.    Defendants' Forum-Related Activities*

22 As to the second prong, WSI's claims arise out of and result from Defaulting Defendants'
23 online commercial activities that establish purposeful availment.

24        *c.    Reasonableness*

25 Finally, the exercise of jurisdiction must be reasonable. However, there is a presumption of

---

[2] During the pendency of this lawsuit, Defendant Morgan transferred the <babypotterybarn.com> site to a new owner, who recently agreed to turn it over to WSI.

1 reasonableness when purposeful availment is present, and the defendant bears the burden of
2 overcoming this presumption by presenting a compelling case that jurisdiction would be
3 unreasonable. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th
4 Cir. 1986). No such showing has been made in this case.

### 3. Service of Process

In deciding whether to grant or deny a default judgment, a court must also assess the adequacy of the service of process on the party against whom default is requested. *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. 2001). Here, WSI properly served all defendants in accordance with the District Courts' authorization, using various means available including electronic mail.[3] Further, proper service of the Summons and Complaint is uncontested. Thus, the service of process was adequate.

## B. Legal Standard

Federal Rule of Civil Procedure ("FRCP") 55(b)(2) permits a court, following a default by a defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. *Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one.")).

The Ninth Circuit has enumerated several factors which the court may consider in exercising its discretion as to whether an entry of default judgment is proper: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim and the sufficiency of the complaint; (3) the sum of money at stake; (4) the possibility of dispute concerning material facts; (5) whether default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

---

[3] On April 17, 2007, Judge White granted WSI permission to serve Defaulting Defendants by email, finding that WSI had effectively communicated with Defendants via email accounts, and that such communication would ensure that Defendants had adequate notice of the action and an opportunity to be heard. (Doc. #36.)

In applying this discretionary standard, the factual allegations contained in the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.1987); *see also Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378, *1 (N.D. Cal. 2000) ("Generally, upon an entry of default, the factual allegations of the plaintiff's complaint will be taken as true.").

**C.    Application to the Case at Bar**

    1.    <u>Prejudice to WSI</u>

Under the first *Eitel* factor, the Court must first examine whether WSI will suffer prejudice if default judgment is not granted. *Eitel*, 782 F.2d at 1471-72. Here, without a judgment in its favor, WSI would be left without a remedy or a means to prevent Defendants' continued infringement. Thus, failure to grant WSI's motion for default judgement would result in substantial prejudice.

    2.    <u>Sufficiency of the Complaint and Likelihood of Success on the Merits</u>

The second *Eitel* factor addresses the sufficiency of WSI's complaint and the probability of its success on the merits of its underlying claims. *Walters v. Statewide Concrete Barrier, Inc.*, 2006 WL 2527776, at *4 (N.D. Cal. 2006) ("A party seeking default judgment must state a valid claim upon which it may recover."). Here, WSI's FAC alleges valid claims, as well as the facts necessary to establish their claims. WSI alleges five causes of action in its FAC: (1) trademark infringement; (2) false designation of origin; (3) trademark dilution; (4) contributory trademark infringement; and (5) California unfair competition.

        *a.    Trademark Infringement and False Designation of Origin under the Lanham Act, and California Unfair Competition*

WSI's first two claims are for trademark infringement and false designation of origin under the Lanham Act. 15 U.S.C. §§1114, 1125. In the present case, as in many trademark infringement cases, the essential elements of these two federal claims are identical. *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir.1999) (noting that infringement and false designation of origin claims are often identical, except that false designation of origin claims protect both registered and unregistered trademarks and can protect a wider range of

8

practices, such as false advertising).  Further, the federal claims, if met with adequate evidence, are also sufficient to establish Defendants' liability under the state law claim for unfair competition. *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir.1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *Philip Morris v. Shalabi*, 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004) (noting the identity between the essential elements and standard applied to three distinct claims of federal trademark infringement, federal false designation of origin, and state unfair competition).

Therefore, as to these three claims, the Court need only focus on the legal merits of the claim for federal trademark infringement.  Analyzing the merits of the infringement claim is sufficient because the standard of infringement, i.e., the likelihood of confusion, is essentially implicated in the remaining federal and state causes of action.  *M2 Software, Inc. v. Madacy Entertainment Corp.*, 421 F.3d 1073, 1080 (9th Cir.2005) ("The test of trademark infringement under state, federal, and common law is whether there will be a likelihood of confusion."); *see also Academy of Motion Pictures v. Creative House Promotions, Inc.*, 944 F.2d. 1446, 1457 (9th Cir. 1991) (holding that under both federal trademark infringement and state unfair competition statutes, the "ultimate test" is whether a likelihood of confusion exists) (internal quotations omitted).

To prove a claim of trademark infringement under 15 U.S.C. §1114, a plaintiff must show that: (1) it owns the trademark at issue; (2) the defendant has used in commerce, without authorization, a copy, reproduction, counterfeit or colorable imitation of the plaintiff's mark in connection with the sale, distribution, or advertising of goods and services; and (3) the defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive. 15 U.S.C. §1114(1). Here, WSI alleges all the facts necessary to establish trademark infringement by Defaulting Defendants.  WSI owns the POTTERY BARN registered trademarks.  (FAC ¶¶7-9, 18-19, 27.) Each of the Defaulting Defendants has used WSI's marks or imitations, or variations of them without authorization.  (FAC ¶¶10-11, 14-15.)  Further, Defendants' use of WSI's marks creates consumer confusion, including confusion as to WSI's "affiliation, connection, association, origin, sponsorship,

9

or approval" of Defendants' goods or services. (FAC ¶¶20, 24.) Thus, taking the factual allegations alleged in WSI's complaint as true, the Court finds that WSI has established claims for trademark infringement, false designation of origin, and California unfair competition.

> *b.*     *Trademark Dilution*

WSI also alleges trademark dilution under the Lanham Act. 15 U.S.C. §1125(c). Section 1125(c) provides a remedy for dilution by blurring and by tarnishment. Dilution by blurring is defined as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." *Id.* at §1125(c)(2)(B). Dilution by tarnishment is "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *Id.* at §1125(c)(2)(C). The statute requires that an owner prove the non-owner's use "is likely to cause dilution by blurring or dilution by tarnishment, regardless of the presence or absence of actual or likely confusion." *Id.* at §1125(c)(1).

Section 1125(c), as amended in 2006, no longer requires the owner to demonstrate actual harm, a standard established by the Supreme Court in *Moseley v. Secret Catalogue, Inc.*, 537 U.S. 418, 433-34 (2003). The revision changes the law to the pre-*Moseley* standard. Under that test, injunctive relief is available if a plaintiff can establish that (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir.1998).

Here, taking the allegations in its amended complaint as true, WSI has shown that its trademarks are famous within the meaning of 15 U.S.C. §1125(c). (FAC ¶¶2, 7, 27.) Second, WSI has also shown that Defaulting Defendants are making commercial use of its marks. (FAC ¶¶10-15, 21-22.) Third, WSI's "Pottery Barn" family of trademarks has been famous since before Defendants' use began. (FAC ¶27.) Finally, WSI has shown that Defendants' use of the POTTERY BARN marks are likely to dilute them by associating those marks for children and teenager furnishings with pornographic websites. Thus, the Court finds that WSI has established its claim for trademark dilution.

*c.     Contributory Trademark Infringement*

WSI also brings a claim of contributory trademark infringement under 15 U.S.C. §§ 1114 and 1125. However, when questioned about the contributory infringement claim at the November 8 hearing, WSI's counsel agreed to withdraw it, given the inability to complete the detailed factual analysis necessary in the context of WSI's default judgment motion. Accordingly, WSI's motion should be denied as moot as to the contributory trademark infringement claim.

3.     The Sum of Money at Stake in the Action

The third *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against the Defaulting Defendants. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of the defendant's conduct. *Eitel*, 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Board of Trustees of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. 1997).

Here, WSI seeks to recover Defaulting Defendants' relative profits, as well as its attorney's fees. The Court finds that both are permitted in this case.

*a.     Actual Damages*

"Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), governs the award of monetary remedies in trademark infringement cases and provides for an award of defendant's profits, any damages sustained by the plaintiff, and the costs of the action." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir.1993). Thus, an award of Defaulting Defendants' profits is available to WSI. However, to recover damages, "plaintiff must prove both the fact and amount of damage." *Id.* at 1407; *see also Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620 (9th Cir.1993). As discussed more fully below, WSI seeks, and the undersigned recommends, an equitable accounting of Defendants' profits so that it may determine the amount of damages. Thus, while the Court is unable to determine the reasonableness of any specific damages amount at this time, the undersigned recommends that the District Court grant default judgment and permit WSI the opportunity to brief

11

the specific amount of damages after a full accounting.

          *b.*     *Attorney's Fees and Costs*

Under 15 U.S.C. §§ 1117(a) and 1125(c)(5), the District Court in exceptional trademark infringement and dilution cases may award reasonable attorney fees and costs to the prevailing party. A trademark case is exceptional where the defendant acted maliciously, fraudulently, deliberately, or willfully. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003). On a motion for default judgment, allegations of willfulness are deemed true and, further, a trademark defendant's failure to appear alone warrants a finding that the case is "exceptional" for the purpose of determining entitlement to attorneys' fees. *See, e.g., Philip Morris USA, Inc. v. Castworld Prods.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003); *Taylor Made Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 663 (S.D. Cal. 1997); *Johnson v. Connolly*, 2007 U.S. Dist. LEXIS 31721 at *8 (N.D. Cal. Apr. 18, 2007). Accordingly, the Court finds the present case is exceptional based both on the allegations of Defaulting Defendants' willful use of imitations or variations of WSI's marks, and their apparent disregard of the proceedings in this Court. Thus, an award of attorney's fees and costs is justified. The undersigned recommends that the District Court permit WSI to submit documentation so that it may substantiate the reasonableness of its attorney's fees and costs.

          4.     <u>Possibility of Dispute Concerning Material Facts</u>

The fourth *Eitel* factor considers the possibility of dispute as to any material facts of the case. As Defaulting Defendants have not filed any response(s) to WSI's complaint, a dispute concerning material facts is unlikely. Further, as discussed above, WSI has sufficiently alleged facts necessary to maintain its claims for relief under the Lanham Act and California law. Since Defendants' have made no attempt to challenge the accuracy of the Complaint, no dispute of material fact exists that would preclude the District Court from granting WSI's motion for default judgment.

          5.     <u>Possibility of Excusable Negligence</u>

The fifth *Eitel* factor contemplates the possibility that Defaulting Defendants' failure to respond or otherwise appear was the result of excusable neglect. Under this analysis, the Court considers whether Defendants were put on adequate notice to apprise them of the pendency of the

12

action brought against them. *Castworld Products*, 219 F.R.D. at 500. In addition, the Court also considers whether the circumstances surrounding Defendants' failure to answer the complaint are sufficient to excuse or justify its default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default cannot be attributed to excusable neglect where defendants were properly served with the complaint, the notice of entry of default, and the papers in support thereof).

In the instant case, each of the Defaulting Defendants was validly served with WSI's initial complaint and FAC in accordance with Judge White's order authorizing electronic service of process. (Doc. #36.) In his order, Judge White found that "WSI . . . established that the email accounts [it] has for defendants have been effective means of communicating with the defendants, which would serve the purposes of ensuring the defendants receive adequate notice of this action and an opportunity to be heard. (Doc. #36 at 3.) Consequently, the Court finds that there is little possibility of excusable neglect, and this factor weighs in favor of granting default judgment.

      6.    <u>Policy for Deciding on the Merits</u>

Under the final *Eitel* factor, the Court must consider the strong policy of the federal courts in favoring decisions on the merits. However, this policy is not dispositive; rather, the Court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors. *PepsiCo, Inc. v. California Security Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Furthermore, the "defendant's failure to answer the plaintiff's complaint makes a decision on the merits of a case impractical, if not impossible." *Id*. As a consequence, the policy of favoring decisions on the merits does not necessarily preclude a court from granting a default judgment when the defendant fails to respond. *Walters*, 2006 WL 2527776, at *6. Here, Defendants have refused to participate in the proceedings brought against them, despite adequate notice and opportunity to do so. Thus, default judgement is appropriate despite the strong policy of the federal courts in favoring decisions on the merits.

**D.    Remedies**

In its motion, WSI seeks four types of relief: (1) a permanent injunction prohibiting

Defaulting Defendants from using its marks; (2) recovery of its reasonable attorney's fees and costs; (3) an accounting and disgorgement of Defendants' relative profits; and (4) an order temporarily prohibiting transfer of Defendants' domain names, pending final relief.  The Court shall consider each in turn.

### 1.  Permanent Injunction

Under the Lanham Act, the District Court may grant an injunction "according to principles of equity" to remedy violations of a trademark owner's rights under §§ 1114 and 1125, and to prevent the recurrence of such violations.  15 U.S.C. §1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).  Furthermore, injunctive relief is available in the default judgment setting.  *Castworld Products*, 219 F.R.D. at 502.

Here, WSI's amended complaint specifically alleges that Defendants' actions cause it irreparable harm and, unless enjoined from using WSI marks or variations of those marks, will continue to do so.  (FAC ¶22.)  Considering that Defaulting Defendants are aware of the serious claims brought against them and have chosen not to respond, the Court finds that the proposed injunctive relief is appropriate and failure to grant the injunction would expose WSI to the risk of continuing irreparable harm.

### 2.  Attorney's Fees and Costs

As discussed above, this case merits an award of attorney's fees and costs, and the undersigned recommends that the District Court permit WSI to submit documentation so that it may substantiate the reasonableness of WSI's attorney's fees and costs.

### 3.  Accounting and Disgorgement of Relative Profits

WSI also seeks an equitable accounting of Defaulting Defendants' profits related to their infringement.  Pursuant to 15 U.S.C. § 1117(a), in trademark infringement cases, the District Court has the power to "assess . . . profits and damages or cause the same to be assessed under its direction."  "An accounting of profits under § 1117(a) is not synonymous with an award of monetary

14

damages"; rather, "'[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" *Reebok Int'l, Ltd. v. Marnatech Enters.,* 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Company*, 299 F.2d 772, 777 (7th Cir. 1962), *cert. denied*, 370 U.S. 923 (1962)). Thus, "the Lanham Act authorizes the district court to grant [WSI] an accounting of [Defaulting Defendants'] profits as a form of final equitable relief." *Id.*

Here, WSI's amended complaint expressly includes a claim for accounting of Defendants' profits, and the Court finds such relief is appropriate. Defendants' internet businesses rely on the volume of traffic to their websites. As they used WSI's marks to presumably increase user traffic to those sites and create economic value, the District Court should permit an accounting to determine whether Defendants generated revenues through advertising, customer payments, subscription fees, and other forms of compensation. (FAC ¶39.) Such an order is especially appropriate here because Defendants' infringements were intentional and, by failing to appear in this case, they deprived WSI of the opportunity to conduct damages discovery.

4. <u>Order Temporarily Prohibiting Transfer of Domain Names</u>

WSI also seeks on order provisionally prohibiting the sale or transfer of Defendants' domain names, pending the accounting and final relief. Pursuant to their inherent equitable authority, courts may prohibit the transfer of a trademark defendant's relevant assets, such as domain names, to ensure that assets are available to satisfy the judgment. *Reebok*, 970 F.2d at 559. "Because the Lanham Act authorizes the district court to grant . . . an accounting of . . . profits as a form of final equitable relief, the district court has the inherent power to freeze . . . assets in order to ensure the availability of the final relief." *Id.* The Court finds such an order appropriate in this case in aid of the accounting. Because Defendants used the domain names to accomplish their infringement, it is unclear whether any other assets are available to satisfy a judgment. As Defendants could easily sell or transfer these online properties to avoid a judgment, the District Court should provisionally prohibit their sale or transfer pending final relief.

### IV. CONCLUSION

Based on this analysis, the Court RECOMMENDS that the District Court GRANT WSI's

15

Motion for Default Judgment, with the exception of its withdrawn claim for contributory trademark infringement. The Court further RECOMMENDS entry of the following order:

IT IS ORDERED THAT judgment shall be entered for Plaintiff Williams-Sonoma, Inc., and against Defaulting Defendants Online Marketing Services, Ltd., Unimaster, Ltd., Andrej Korchev, YetisCash, Ales Lexico, Vladimir Techl, Sweethelda Ballesteros, Stein Tvedt, and Eddie Morgan.

Defaulting Defendants, their agents, employees, successors, and all persons acting in concert with them who receive notice of this Order, are permanently enjoined from infringing or diluting in an manner WSI's POTTERY BARN family of marks. They are permanently enjoined from any commercial use of the marks POTTERY BARN®, pottery barn kids®, PBteen®, P.B.Kids®, or any colorable imitation or variations of these marks.

Defaulting Defendants shall provide an accounting of their profits related to their infringement of the POTTERY BARN trademarks, for the purpose of awarding WSI monetary damages based on Defendants' profits. To facilitate accounting of profits, each Defaulting Defendant shall produce documents substantiating their revenues and relevant costs from their operation of the following domain names: <www.filthserver.com>, <www.onlinemarketingservices.biz>, <www.slutty-teens.net>, <www.just-a-porn.com>, and <www.sexcountry.net>. Further, each Defaulting Defendant shall produce records of payments by Adult Friend Finder, or other web site businesses, for web traffic directed from the aforementioned web sites that unlawfully used WSI's marks. Defaulting Defendants shall produce records covering the entire period of their use of the POTTERY BARN trademarks, including the months of September 2006 through June 30, 2007. Defaulting Defendants shall produce such financial statements or records within 60 days of the entry of this Order by the District Court.

Defaulting Defendants, their agents, employees, successors, and all persons acting in concert with them who receive notice of this Order, are enjoined temporarily from selling, assigning, encumbering, or transferring in any manner the domain names that Defaulting Defendants used to infringe and/or dilute WSI's trademarks as alleged in the First Amended Complaint, including the following domain names: <www.filthserver.com>, <www.onlinemarketingservices.biz>,

16

<www.slutty-teens.net>, <www.just-a-porn.com>, and <www.sexcountry.net>. Notice of this Order shall be delivered to the relevant domain name registries, registrars, and other authorities with control over the disposition of these domain names. This temporary injunction shall expire as to each domain name upon the respective Defaulting Defendants' full compliance with this Court's Order, accounting of profits, and satisfaction of the final relief ordered by the Court or joint stipulation by the parties of settlement of dispute and dismissal.

WSI shall recover as damages from the Defaulting Defendants, jointly and severally, its reasonable attorney's fees and costs.

Pursuant to FRCP 72, any party may serve and file objections to this Report and Recommendation within 10 days after being served.

**IT IS SO RECOMMENDED.**

Dated: December 6, 2007

MARIA ELENA JAMES
United States Magistrate Judge

17